UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SEALE & ASSOCIATES, INC., )
)
Plaintiff, )
)
v. ) Civil Action No. 1:10-cv-1093
)
VECTOR AEROSPACE CORPORATION, )
et al., )
)
Defendants. )

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Vector Aerospace Corporation's and Defendant Donald K. Jackson's Joint Motion to Dismiss. Plaintiff filed suit in the Circuit Court for Arlington County alleging breach of contract against Vector Aerospace Corporation (Vector) and unjust enrichment of both defendants. Defendants removed the action to the U.S. District Court for the Eastern District of Virginia.

Plaintiff is a Virginia corporation that focuses on mergers and acquisitions, strategy consulting, and corporate finance. Defendant Vector Aerospace Corporation is a Canadian corporation, and Defendant Donald K. Jackson is a Canadian citizen who was Chairman of the Board for Vector Aerospace Corporation at all times relevant to this action.

Plaintiff alleges that Defendant Jackson informed Plaintiff that Vector was seeking to divest itself of its subsidiary Atlantic Turbines International (ATI) in May 2005. Plaintiff alleges that Defendant Jackson retained Plaintiff in August 2005 to provide Defendant Vector with an estimate of ATI's value. Plaintiff then provided Vector with an estimate of ATI's enterprise value.

Plaintiff further alleges that Plaintiff and Defendant Jackson discussed fee arrangements for Plaintiff's role in determining ATI's enterprise value and for prospective efforts to locate a purchaser for ATI. The parties discussed various fees for Plaintiff's services in securing a prospective purchaser, but never reached an agreement on the exact percentage or amount. Plaintiff alleges that Defendant Jackson agreed to pay Plaintiff for its efforts, but waited to make a final determination as to the exact amount until Plaintiff brought a prospective purchaser forward.

Plaintiff introduced Defendants to a prospective purchaser known as the Starboard Group. Between October and December 2005, Defendant Vector and the Starboard Group negotiated a price for the sale of ATI. Vector's Board of Directors met in December 2005 to consider the offer, at which time the Board decided not to sell ATI.

Plaintiff then requested a fee for introducing the Starboard Group to Vector. Defendant Vector refused to pay Plaintiff.

While Vector was negotiating with the Starboard Group, Defendant Jackson purchased a block of over 4 million shares of Vector stock for his own account at a price of $4.07 per share for the share block. At the time, the price of Vector shares was $3.90 per share. Plaintiff alleges that Defendant Jackson was motivated to pay a 17 cent per share premium by the knowledge that selling off ATI alone would yield $4.40 per Vector share—knowledge that Plaintiff claims its valuation services provided.

Plaintiff filed suit against Defendants in the Ontario Superior Court of Justice alleging breach of contract, breach of the duty of good faith, and unjust enrichment arising from Defendants' refusal to pay Vector. The parties subsequently spent three years litigating in Canada. The Ontario Superior Court found that "the services to be provided by Seale to Vector were uncertain, the amount of the fee to be paid was not agreed upon and, there was no agreement on when and under what conditions a fee would be paid." Seale & Assocs. Inc. v. Vector Aerospace Corp., 2009 CarswellOnt 1896, para. 24 (Can. Ont. Sup. Ct. J.) (WL). On appeal, the Court of Appeal for Ontario upheld the trial court's findings. Seale & Assocs. Inc. v. Vector

3

Aerospace Corp., 2009 CarswellOnt 7686 (Can. Ont. C.A.) (per curiam).

Plaintiff issued an invoice to Vector in May 2010 for the valuation services that Plaintiff claims to have performed in 2005. Vector denied any obligation to pay the invoice. Plaintiff subsequently brought this suit against Defendants, claiming that the prior Canadian action was based upon failure to pay for the identification of prospective purchasers and that this action is based on failure to pay for valuation services.

When considering a motion to dismiss, the Court accepts all well-pleaded allegations as true and views the complaint in a light most favorable to the plaintiff. CTI/DC, Inc. v. Selective Ins. Co. of Am., 392 F.3d 114, 118 (4th Cir. 2004) (quoting Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)). A plaintiff must allege facts showing a claim's plausibility. See Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). The court does not have to accept "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). When a complaint alleges sufficient facts on its face, the court can rule on affirmative defenses, such as the defense that the claim is time-barred. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). The court may also consider "official public records, documents

central to a plaintiff's claim, and documents sufficiently referred to in the Complaint without converting the motion to dismiss into one for summary judgment." Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006); see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Consequently, a court can consider uncontested documents that are relevant to the disposition of a motion to dismiss. Am. Int'l Specialty Lines Ins. Co., 628 F. Supp. 2d 674, 678 (E.D. Va. 2009).

I. Res Judicata

A federal district court sitting in diversity applies the state law of the forum in which it sits. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007). Complete diversity exists between the Virginia Plaintiff and Canadian Defendants in this action, and the amount in issue is over $75,000. The Court has diversity jurisdiction over this action and must apply the state law of Virginia to determine the preclusive effect of the Canadian lawsuit.

The Court must establish that the Ontario judgment meets the requirements of the Uniform Foreign Country Money-Judgments Act to ascertain whether the prior judgment is conclusive and recognizable under Virginia law. Jaffe v. Accredited Sur. & Cas. Co., 294 F.3d 584, 593 (4th Cir. 2002). Under the Uniform

5

Foreign Country Money-Judgments Act, Va. Code Ann. §§ 8.01-465.6 to -465.13 (2007), a foreign country's final judgment granting or denying monetary recovery is conclusive between the parties to the extent that it grants or denies a monetary sum. § 8.01-465.9. A foreign country money judgment will not be conclusive between the parties when the foreign court lacked personal or subject matter jurisdiction, or if the foreign country's system does not provide impartial tribunals or due process of law. § 8.01-465.10. There is no dispute about the Ontario Superior Court of Justice's jurisdiction over the prior action. Plaintiff chose to bring its action in Ontario against Defendants located in Ontario, where it received a full and fair opportunity to litigate its claims for three years. After the Ontario Superior Court of Justice issued a judgment, Plaintiff filed an appeal and received appellate review of the judgment. See Miller v. Miller, 240 F.3d 392, 401 (4th Cir. 2001) (recognizing the Ontario Court of Appeal as "a competent judicial body"). As a result, the Ontario judgment was final and is conclusive between the parties, and no other factors that permit non-recognition of a foreign country judgment are present here. Thus, the Court will recognize the Ontario judgment.

Having established that the Ontario judgment will be recognized under the Uniform Foreign Country Money-Judgments Recognition Act, the Court must still determine the extent of

recognition. It is unclear whether the preclusive effect of the Ontario judgment should be determined by Virginia or Canadian law, but it is unnecessary to make such a determination here because both laws preclude Plaintiff's current lawsuit. See Andes v. Versant Corp., 878 F.2d 147, 149 (4th Cir. 1989) (acknowledging that some courts have given foreign country judgments full faith and credit while others have used the forum state's res judicata rules, and suggesting that the choice should be made in every case by considering the issues involved and the effects on both courts).

Virginia courts will treat a recognized foreign country's judgment in the same manner as the judgment of a sister state that is entitled to full faith and credit. § 8.01-465.09. Accordingly, a recognized foreign country's judgment will bar a second action on the same claim in Virginia under the doctrine of res judicata. See Guinness PLC v. Ward, 955 F.2d 875, 889 n.9 (4th Cir. 1992) (acknowledging that under Maryland's version of the Uniform Foreign Money-Judgments Act "a finding of recognition establishes that such judgment is conclusive between the parties and will be given res judicata and collateral estoppel effect by the recognition court."). Res judicata bars a second cause of action that arises from the same conduct, transaction, or occurrence on which a prior final judgment was issued, regardless of whether the party raised the second

action's legal theory in the first action. <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980) ("[A] final judgment on the merits of an action precludes the parties...from relitigating issues that were or could have been raised in that action."); <u>see also</u> Va. Sup. Ct. R. 1:6.[1] Similarly, Canadian law also applies the principle of res judicata, and a final judgment in a lawsuit is conclusive in a second lawsuit as to all factual circumstances giving rise to legal claims that the parties brought forward or should have brought forward initially. <u>Las Vegas Strip Ltd. v. Toronto (City)</u> (1996), 30 O.R. 3d 286 (Can. Ont. Gen. Div.), <u>aff'd</u>, (1997), 32 O.R. 3d 651 (Can. Ont. C.A.). In the Ontario action, Plaintiff asserted breach of the duty of good faith, breach of contract, and unjust enrichment for services that Plaintiff provided in connection with a potential sale of Defendant Vector's subsidiary ATI. The Court then issued a final judgment on the merits of the case, noting that Defendants had asked Plaintiff to determine the value of ATI, but finding

---

[1] Res judicata applies when there is "(1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made." <u>Balbir Brar Assocs., Inc. v. Consol. Trading & Servs. Corp.</u>, 477 S.E.2d 743, 746 (Va. 1996) (quoting <u>Smith v. Ware</u>, 421 S.E.2d 444, 445 (Va. 1992)). In both the Ontario and Virginia suits, Plaintiff sought monetary relief for breach of contract and unjust enrichment claims arising out of the same transaction. Seale & Associates Inc. was the plaintiff and Vector and Jackson were the defendants in both suits. Consequently, res judicata bars a second suit on these facts under Virginia law.

8

that the services that Plaintiff was to provide were uncertain. Here, Plaintiff again asserts breach of contract and unjust enrichment for services that Plaintiff provided in connection with a potential sale of Defendant Vector's subsidiary ATI. Indeed, Plaintiff's Amended Statement of Claim initiating the Ontario suit alleged the same facts that the Complaint in this suit alleges. In both suits, Plaintiff has pled the same factual allegations about the same factual transaction to support the same legal claims. Plaintiff's current action appears to be nothing more than an improper attempt to relitigate the merits of the Ontario action. Therefore, Plaintiff's current suit is barred by res judicata under the laws of Virginia and Canada, and the case must be dismissed.

## II. Statute of Limitations

Defendants also argue that the case should be dismissed because the statute of limitations has run on any breach of an alleged contract or unjust enrichment claim. Plaintiff has failed to allege that an enforceable written contract exists between Plaintiff and Defendant Vector. Despite sparse factual allegations, the Court will assume for purposes of this motion that Plaintiff's allegations establish that the parties created an unwritten contract that was subsequently breached.

Under Virginia law, the statute of limitations for breach of an unwritten contract is three years. § 8.01-246. The

limitations period begins to run when the breach of contract occurs. § 8.01-230. Similarly, the statute of limitations for a claim of unjust enrichment is also three years. Belcher v. Kirkwood, 383 S.E.2d 729, 731 (Va. 1989). An unjust enrichment claim begins accruing when Defendants do not pay the expected compensation. Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 299 F. Supp. 2d 565, 576 (E.D. Va. 2004) (citing Primrose Dev. Corp. v. Benchmark Acquisition Fund I, Ltd. P'Ship, 47 Va. Cir. 296, 298 (1998)). In this case, any alleged breach and unjust enrichment occurred when Defendants refused to pay Plaintiff for the valuation services. Both claims began to accrue when Defendants declined to make payment. Plaintiff filed its Complaint on August 3, 2010, so Plaintiff must allege sufficient facts to establish that the failure to pay occurred on or after August 3, 2007.

Plaintiff argues that the statute of limitations only began to run on the breach of contract claim on May 24, 2010-the date that Plaintiff issued an invoice to Defendant Vector—and on June 3, 2010 for the unjust enrichment claims—the date that Vector refused to pay the invoice. Allegedly Defendants did not refuse to furnish payment until they received the May 2010 invoice. However, Plaintiff filed its initial lawsuit against the Defendants on February 1, 2006, because Defendants had <u>already refused</u> to pay Plaintiff for its services. The Complaint

establishes that Plaintiff requested payment at some point between December 15, 2005 and February 1, 2006 for Plaintiff's efforts in finding a purchaser for ATI. Plaintiff's valuation services were performed as a preliminary step in finding a purchaser for ATI and constituted a part of the same transaction, as discussed above. Defendants communicated their refusal to pay for Plaintiff's efforts in procuring a purchaser between December 15, 2005, and February 1, 2006. Thus, Defendants had communicated their unwillingness to pay Plaintiff for any of its services by February 1, 2006, at the latest, and the limitations period for any breach of contract or unjust enrichment claim ran on or before February 1, 2009. Because the Complaint was not filed until August 3, 2010, the breach of contract claim and unjust enrichment claims are untimely and provide an additional ground for dismissal.

III.     Personal Jurisdiction

Defendants also move to dismiss the Complaint on the basis of lack of personal jurisdiction over the Defendants. The Court will only have personal jurisdiction over the Defendants "if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009). Plaintiff asserts that the Court has

personal jurisdiction over Defendants pursuant to Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, which states that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's...[t]ransacting any business in this Commonwealth....". § 8.01-328.1. The burden is on Plaintiff to make a prima facie showing of Defendants' sufficient minimum contacts with Virginia to survive Defendants' jurisdictional challenge. Geometric, 561 F.3d at 276.

The Fourth Circuit uses a three-part test to establish whether the Court has personal jurisdiction over Defendants: "(1) the extent to which the [defendants] purposefully availed [themselves] of the privilege of conducting activities in the State; (2) whether the [plaintiff's] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (quotation marks and brackets omitted).

To establish the first element, Plaintiff must demonstrate that Defendants purposefully availed themselves of the privilege of doing business in Virginia. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985). The Fourth Circuit has set forth a non-exhaustive list of potential factors relevant to this inquiry, including:

- whether the defendant maintains offices or agents in the forum state,
- whether the defendant owns property in the forum state,
- whether the defendant reached into the forum state to solicit or initiate business,
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
- whether the parties contractually agreed that the law of the forum state would govern disputes,
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
- the nature, quality and extent of the parties' communications about the business being transacted, and
- whether the performance of contractual duties was to occur within the forum.

Geometric, 561 F.3d at 278 (citations omitted). The Fourth Circuit has also acknowledged that a State may have personal jurisdiction over an out-of-state person or business if that defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." ALS Scan, 293 F.3d at 714. Nevertheless, mere telephone calls and correspondence negotiating a transaction are insufficient to constitute purposeful activity. See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 451-452 (4th Cir. 2000) (affirming the district court's dismissal for lack of

13

personal jurisdiction in spite of the parties' exchange of telephone calls, letters, and faxes between Ohio and Virginia and plaintiff's emphasis on its own activities in Virginia).

The Complaint establishes few contacts between Defendants and Virginia. Both Defendants are citizens of Canada. They appear to have no offices, agents, or property in Virginia. The Complaint does not allege that Defendants engage in any significant business activities in Virginia. The Complaint actually states that it was Plaintiff's President who called Defendant Jackson to inquire about Defendants' efforts to sell ATI. Defendants' contacts with Virginia amounted to some telephone calls, e-mails, and letters rejecting payment demands. Plaintiff places great weight on the extent of its own activities in Virginia in furtherance of its relationship with the Defendants, but Plaintiff's activities in Virginia directed toward Canadian Defendants do not equate to the Defendants directing their own activities toward Virginia. Id. at 452. Consequently, Plaintiff has failed to make the requisite showing that Defendants purposefully availed themselves of the benefit of doing business in Virginia. Because Plaintiff has not established that Defendants purposefully availed themselves of the privilege of doing business in Virginia, it is unnecessary to consider prongs two or three of the test. Geometric, 561

F.3d at 278. The Court does not have personal jurisdiction over either Defendant. Thus, it is hereby

ORDERED that Defendants' Motion to Dismiss is GRANTED and the case is DISMISSED.

An appropriate order shall issue.

_____/s/_____
Claude M. Hilton
United States District Judge

Alexandria, Virginia
December 7, 2010